UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ELRETA DODDS,**

        **Plaintiff,**                  **CIVIL ACTION NO. 12-CV-14567**

vs.                              **DISTRICT JUDGE GERALD E. ROSEN**

                                      **MAGISTRATE JUDGE MONA K. MAJZOUB**

**RICHARD DALE SNYDER, in his
official capacity as Governor of the State
of Michigan; MAURA D. CORRIGAN,
in her official capacity as Director of the
State of Michigan Department of Human
Services; DUANE BERGER, in his official
capacity as Chief Deputy Director of DHS;
SUSAN KING, in her individual capacity
and official capacity as Director of DHS
Human Resources; INGHAM COUNTY;
INGHAM COUNTY DEPARTMENT OF
HUMAN SERVICES; and STATE OF
MICHIGAN DEPARTMENT OF
HUMAN SERVICES,**

        **Defendants.**
_____/

## REPORT AND RECOMMENDATION

      Plaintiff Elreta Dodds filed this action alleging, through her Amended Complaint, violations of 42 U.S.C. §§ 1981 and 1983, the Equal Pay Act of 1963, and Michigan's Elliot-Larsen Civil Rights Act alleging that Defendants discriminated against her based on race, sex, and (possibly) religion. (*See* docket no. 6 at 15-18.) Before the Court are Defendants' Motions to Dismiss (docket nos. 5 and 11). Plaintiff filed Responses to each Motion (docket nos. 7 and 13), and Defendants

1

filed a Reply (docket no16).[1]  The Motions have been referred to the undersigned for consideration. (Docket no. 14.)  The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation.[2]

## I. Recommendation

For the reasons that follow, the Court recommends granting Defendants' Motions to Dismiss (docket nos. 5 and 11).  Therefore, the Court recommends dismissing this case in its entirety.

## II. Report

### A. Facts[3]

On July 14, 2008, Plaintiff, an African American woman, was appointed as Director of the St. Clair County Department of Human Services ("St. Clair DHS").[4]  According to Plaintiff, St. Clair DHS is roughly 95% white and 5% minority with respect to its employees, and Plaintiff was the first African American given a permanent position as Director within the department.

---

[1] Defendants filed their initial Motion to Dismiss in lieu of an Answer to Plaintiff's original Complaint.  (Docket no. 5.)  Plaintiff filed her Response (docket no. 7) and an Amended Complaint (docket no. 6).  Defendants then filed their Motion to Dismiss Plaintiff's Amended Complaint.  (Docket no. 11.)  Plaintiff's Amended Complaint is substantially similar to her first complaint with two notable exceptions: (1) her Amended Complaint adds Defendant King in her individual and official capacities, and (2) her Amended Complaint adds a due-process claim.  (*See* docket nos. 1 and 6.)

[2] The Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

[3] Unless otherwise indicated, the Court has adopted all of the facts herein from Plaintiff's Amended Complaint.  (*See* docket no. 6 at 2-14.)

[4] Without explanation, Plaintiff sued the Ingham County and the Ingham County Department of Human Services ("Ingham DHS"), not St. Clair County or St. Clair DHS.  (*See* docket nos. 1 and 6.)

2

In January of 2009, Stanley Stewart,[5] the Deputy Director of the Michigan Department of Human Services ("Michigan DHS") denied Plaintiff's request to fill ten staffing positions, which Plaintiff alleges caused an increase in the caseload for children's services in St. Clair. Plaintiff further alleges that around that same time, Stewart ordered Plaintiff to "establish a private agency presence in the county" by working with Robert Ennis, CEO of Ennis for Children, a 501(c)(3) organization. Plaintiff indicates that no request to fill staffing positions had ever been denied in the past and that none of her predecessors had been asked to create a private agency presence in the county. Plaintiff notes that Stewart is an African American male and that her most recent predecessor was a white male.

In May 2009, Stewart called Plaintiff to a meeting where he indicated that he was unhappy with her. Stewart said that he was displeased that Plaintiff was trying to find a way to avoid placing some of her staff on overtime and that he did not approve of a candidate that Plaintiff had selected to fill a management position. Plaintiff alleges that Stewart initially indicated that he was unhappy with the candidate because she "had a bad reputation" but that Stewart eventually stated that "he was 'hiring too many black people.'" Plaintiff informed Stewart that the candidate was actually a white female, and "shrugged it off." Nevertheless, Stewart told Plaintiff that her "job was on the line." Plaintiff indicates that following her meeting with Stewart, she "found herself working in a hostile working environment."

In July of 2009, Stewart became "highly involved" in the case of a teenager who had been placed in foster care through St. Clair DHS. Plaintiff notes, however, that the teenager had been

---

[5]Although he appears to be a central player in Plaintiff's Complaint, Plaintiff has not included Mr. Stewart as a defendant in his official or individual capacity.

placed in foster care in 2007, well before she became the Director of St. Clair DHS. Apparently, the teenager had been set up for adoption with her foster parents in violation of the Indian Child Welfare Act, so the matter came to Stewart's attention.

In August 2009, Stewart assigned Steve Yager, Director of Clinton County Department of Human Services, to oversee all of children's services for St. Clair DHS while he investigated the issue. As the investigation commenced, Kenneth Snyder, foster care supervisor for St. Clair DHS, was moved to another county. Another protective services worker, Mike Rider, was put on suspension with pay and sent home. Plaintiff notes that Yager, Snyder, and Rider are all white males.

On October 5, 2009, Plaintiff's immediate supervisor, Terry Salacina, notified Plaintiff that she was being reassigned to a "special projects job" in Wayne County on October 19, 2009. Salacina indicated that according to Yager, children in St. Clair were not being serviced properly. Plaintiff alleges that Yager had told her the opposite. Salacina also told Plaintiff that a "second reason for the decision to move her was because some of the managers and supervisors had complained against her." Plaintiff indicated that these individuals had complained because she established fair promotional practices, enforced the Michigan DHS dress code, developed a volunteer committee, mandated that no child be placed in foster care without a court order, and banned contracted employees from using the office lunch room. Additionally, in October 2008, Plaintiff cancelled the annual, all-day, St. Clair DHS Halloween office party. According to Plaintiff, the office employees would dress in costumes and bring their children to work to trick-or-treat, "much to the disruption of the business." Plaintiff indicates that she cancelled the party because of

her religious beliefs and that the employees were not happy about her decision.[6] Plaintiff then met with Stewart, at her own request, and he indicated that he had "lost confidence" in her and that St. Clair's children's services caseload numbers were too high.

On October 8, 2009, Plaintiff received a letter entitled "Notification of Reassignment." The notice informed Plaintiff that she was reassigned to the Wayne County Department of Human Services. The notice also informed her that she had seven calendar days to accept the reassignment and return the notice to Defendant King; Plaintiff's failure to accept the reassignment would result in her separation. Plaintiff notes that she was "stripped of her title," and "placed in a cubicle;" her office in St. Clair was a corner office with a view. Plaintiff indicates that she felt "humiliated, unsafe, unprotected, disillusioned, harassed, and unwelcome as an employee." Snyder and Rider, however, were reinstated to their positions with St. Clair DHS, although Synder was assigned to a different division. Kay Andrzejak, a white woman who was also one of the three original candidates for Plaintiff's position, was hired as Acting Director of St. Clair DHS.

On January 15, 2010, a three-year-old girl who was being serviced by St. Clair DHS was murdered by one of her parents. Plaintiff brings this to the Court's attention because on April 18, 2010, Andrzejak was promoted to permanent Director status and Yager was promoted to Child Welfare Manager of Field Operations. Plaintiff ultimately decided to retire on November 1, 2010.

Plaintiff also included in her Complaint what she calls "Other Considerations." In this

---

[6]On August 13, 2009, Plaintiff was approached by one of her employees who indicated that many of the employees were unhappy with her and that they wanted to "sabotage" her. The employee indicated that "[t]hey say you're making this a racial office," and "[t]hey are attacking you on how religious you are." The employee added, "[Y]ou've got a true mess on your hands in this county Elreta because you don't even have support, and you don't even know you don't have support . . . it appears to me that they're going to try to take you down and get rid of you."

section, Plaintiff states the following:

- Plaintiff was appointed Director of St. Clair DHS at an annual salary of $93,000. Her predecessor, Jim Nunnold (a white male), was paid $109,000. In her Response to Defendant's Motion, however, Plaintiff indicates that a "credible and reliable" source had recently informed her that Nunnold was actually paid $93,000 annually. (Docket no. 13 at 23.) Plaintiff alleges that she and Nunnold "supervised the same programs and virtually the same employees, in the same building, same office, same city, same county, during the time each of them served as Director."

- "As Director, Plaintiff was responsible for the overview and approval of outside contracts." Plaintiff established the Homelessness Prevention and Crisis Project in which St. Clair DPS contracted with the United Way of St. Clair County, Safe Horizons of St. Clair County, and the Community Action Agency of St. Clair County. Plaintiff alleges that after she was reassigned to Wayne County, she could no longer supervise the program, and it "disintegrated."

- Plaintiff alleges that the Michigan DHS has a reputation of appointing African Americans as directors and then forcing them out.

- Plaintiff alleges that Stewart has a reputation of giving African American directors "a much harder time than white directors."

- Plaintiff alleges that Michigan DHS Director Ishmael Ahmed became aware of Plaintiff's "questionable treatment" and did nothing to correct it.

- Plaintiff alleges that she was a dedicated employee who worked most days from 9:30 a.m. to 9:30 p.m.

- Plaintiff alleges that she had a 12-month probationary period and that her evaluations "met expectations" and that she performed "adequately." She had never been disciplined during her 25-year tenure with Michigan DHS.
- Stewart did not actually hire her; she was hired by Renee Hayward, an African American woman.

In light of her allegations, Plaintiff claims the following:

1. Defendants violated the Elliot Larsen Civil Rights Act ("ELCRA") when Stewart denied her an allocation of 10 workers to fill staff positions. Plaintiff alleges that this was unprecedented in the St. Clair DHS office and, therefore, it was racially motivated. (Docket no. 6 at 15.)

2. Defendants violated the ELCRA when Stewart asked her to establish the private agency presence in St. Clair County with Ennis. Plaintiff alleges that this was unprecedented in the St. Clair DHS office and, therefore, it was racially motivated. (*Id.* at 15.)

3. Defendants violated the ELCRA when Stewart stated that he was "hiring too many black people." Plaintiff alleges that this shows how Defendants treat African American managers. (*Id.* at 15-16.)

4. Defendants violated 42 U.S.C. § 1983 and the ELCRA when they required her to sign the Notification of Reassignment letter under a threat of termination. Plaintiff alleges that this violated her due-process right to challenge the reassignment while she was still employed. (*Id.* at 16.)

5. Defendants violated 42 U.S.C. § 1981 and the ELCRA when she was reassigned for

   the department's failings with regard to the teenager's adoption but Yager and Andrzejak were promoted when the three-year-old girl was murdered. Plaintiff alleges that this shows a double standard of performance expectations that is racially motivated. (*Id.* at 16-17.)

6.  Defendants violated 42 U.S.C. § 1981 and the ELCRA when Snyder and Rider were reinstated to their positions but she was not. Plaintiff alleges that this was racially motivated. (*Id.* at 17.)

7.  Plaintiff alleges that Defendants violated the Equal Pay Act of 1963 when they paid her $16,000 per year less than her predecessor. (*Id.* at 17.)

8.  Plaintiff alleges that Defendants violated 42 U.S.C. § 1981 when they stripped her of her opportunity to make and enforce contracts as the Director of St. Clair DHS and gave the position to Andrzejak. (*Id.* at 17-18.)

9.  Plaintiff alleges that she "might also have a cause for a Religious Discrimination claim" but that the claim "depend[s] on discovery." (*Id.* at 18.)

As relief, Plaintiff requests:

- compensatory damages in the amount of $300,000.00;
- punitive damages in the amount of $1,500,000.00;
- injunctive relief "enjoining the Defendants from further subjecting the Plaintiff to any type of subsequent discrimination and/or retaliation;"
- interest and costs related to her claims; and
- any other damages that the court deems proper.

(*Id.* at 18-19.)

### B. Standards of review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction by attacking the claim on its face, in which case all factual allegations of the Plaintiff must be considered as true, or by attacking the factual basis for jurisdiction. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). If the factual basis for jurisdiction is challenged, the court must weigh the evidence, and the plaintiff bears the burden of proving jurisdiction. *Id.*

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. The court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

This acceptance of factual allegations as true, however, is inapplicable to legal conclusions: "Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotations and citations omitted). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

"Determining whether a complaint states a plausible claim for relief [is] a context-specific

9

task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* To make this determination, a court may apply the following two-part test: (1) "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth; and (2) "assume the veracity [of the remaining allegations] and determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

### C.     Analysis

Plaintiff's Amended Complaint is set forth over 19 pages and is broken into various sections, paragraphs, and sub-paragraphs. (See docket no. 6.) Defendants have moved the Court to dismiss Plaintiff's complaint. As an initial matter, the Court notes that "[p]ro se complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers' and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (emphasis removed, citation omitted). It is through this prism that the Court views Plaintiff's Complaint.

### 1.     Plaintiff's Claims under 42 U.S.C. §§ 1981 and 1983 and the ELCRA Against the State Departments and the Individual Defendants in their Official Capacities

The Eleventh Amendment bars "all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments," provided the state has not waived its immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *Thiokol Corp. v. Dep't of Treasury, State of Michigan, Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993) (citations omitted). As Defendants note, "[n]either Congress nor the state has waived this jurisdictional immunity with respect to claims brought under 42 U.S.C. §1981, *McCormick v. Miami Univ.*, 693 F.3d 654 (6th Cir. Sept. 10, 2012) (holding that Eleventh Amendment immunity bars 18 U.S.C. §1981 claims brought against the State and State officials in their official capacity), 42 U.S.C. §

10

1983, *Colvin v. Caruso, et al*, 605 F.3d 282, 289-90 (6th Cir. 2010) (same, for 18 U.S.C. §1983 claims), or the Elliot Larsen Civil Rights Act, *McCormick*, 693 F.3d at 664 ('McCormick's state law claims against [the State and State officials] in their official capacities are barred by the Eleventh Amendment . . . . The federal courts are simply not open to such state law challenges to official state action . . . .')." (Docket no. 5 at 9-10.)

The Michigan Department of Human Services, is a department of Michigan government. Mich. Comp. Laws Ann. 400.1. Plaintiff argues that she is suing the Ingham County DHS, and not an entity of the state (*see* docket no. 13 at 8-9), but including a county name, such as "Ingham County Department of Human Services," simply identifies the local division of the state's department. *See Lintz v. Skipski*, 807 F.Supp. 1299, 1303 (W.D. Mich.1992); *see also Thomas v. Michigan Family Independence Agency*, 67 F. App'x 908 (6th Cir. 2003). Moreover, the Sixth Circuit has emphasized that, "the most important factor bearing on the Eleventh Amendment question is who would pay a judgment against the entity being sued." *S.J. v. Hamilton County, Ohio*, 374 F.3d 416, 420 (6th Cir. 2004). Any judgment entered against Ingham DHS would be paid from the state treasury. Mich Comp. Laws Ann. 18.1396; *see Parker v. State*, Nos. 234828, 234829, 234830, 2004 WL 435395, at *1 (Mich. Ct. App. Mar. 9, 2004) (affirming judgment of the Michigan Court of Claims); *Pope v. Family Independence Agency*, No. 205898, 1999 WL 33437824 (Mich. Ct. App. Aug.17, 1999) (same).

Additionally, "individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citations omitted). Thus, "a suit for monetary damages against an individual in his or her official capacity is deemed to be an action against the state." *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir.2004) (citation

11

omitted). With the exception of Defendant King, Plaintiff has not named any of the individual defendants in their individual capacities. Therefore, Plaintiff's Claims under 42 U.S.C. §§ 1981 and 1983[7] and the ELCRA against Ingham DHS,[8] Michigan DHS, Richard Synder, Maura Corrigan, Duane Berger, and Susan King (in her official capacity) are barred by the Eleventh Amendment.[9]

To the extent that Plaintiff argues her suit is for injunctive relief against the individual defendants in their official capacities, Plaintiff requests that the court "[p]ermanently enjoin the Defendant/s from further subjecting the Plaintiff to any type of subsequent discrimination and/or retaliation." (Docket no. 6 at 18.) Plaintiff retired from her position with the Michigan DHS in November 2010 (*id.* at 5); thus, her request for injunctive relief as to Defendants is moot.

### 2. Plaintiff's Claims against Defendant King in her Individual Capacity

To state a claim against an individual for monetary damages under § 1983, Plaintiff must

---

[7]Plaintiff makes a passing reference to a violation of her "Fourteenth Amendment right for Due Process" in her Amended Complaint. (Docket no. 6 at 16.) She argues that "[b]y threatening the Plaintiff with dismissal if she did not accept the reassignment, the Department deprived Plaintiff of the liberty to challenge the reassignment." (Docket no. 13 at 24.) The Court would recommend dismissing any due-process claim raised by Plaintiff under Fed. R. Civ. P. 12(b)(6) because Plaintiff was not deprived of a constitutionally protected liberty or property interest; she was not terminated from her employment, and she did not lose any pay or benefits. She was reassigned to a different department and a different position. Additionally, Plaintiff alleges possible claims for "Religious Discrimination." (Docket no. 6 at 18.) Plaintiff notes that she "might" have the claims and that they "depend[] on discovery." Thus, the Court would also recommend dismissal of these claims under Fed. R. Civ. P. 12(b)(6). Nevertheless, even if Plaintiff had sufficiently plead her due-process or religious-discrimination claims, they each arise under 42 U.S.C. § 1983. Thus, the Court recommends dismissal under Fed. R. Civ. P. 12(b)(1).

[8]The Court's analysis would remain the same if Plaintiff had named St. Clair County and St. Clair DHS instead of Ingham County and Ingham DHS.

[9]Plaintiff's claims against the Michigan Department of Human Services and Ingham DHS also fail on a separate and independent ground. States and their departments are not "persons" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

allege some specific personal wrongdoing on the part of each individual Defendant. Section 1983 liability may not be predicated upon theories of vicarious liability or respondeat superior. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999). Further, claims of supervisory liability will suffice only if the plaintiff alleges and shows that the supervisor personally engaged in or otherwise "authorized, approved, or knowingly acquiesced in the unconstitutional conduct." *Id.* (liability of supervisory personnel must be based on more than the mere right to control employees). Where a defendant's only involvement in the alleged unconstitutional conduct is the denial of administrative grievances or the failure to act, the defendant cannot be held liable under § 1983.

Plaintiff's Amended Complaint references Defendant King one time: King, in her capacity as Director of Human Resources, sent the Notification of Reassignment letter that Plaintiff received in October 2009. (*See* docket no. 7 at 14.) The Court can find no reference to any alleged acts committed by King in her individual capacity let alone any allegation that she "authorized, approved, or knowingly acquiesced in the unconstitutional conduct." Therefore, Plaintiff's Complaints against King in her individual capacity should be dismissed.

### 3. Plaintiff's Claims against Ingham County

Plaintiff makes no allegations directly against Ingham County, but she included Ingham County as a party in the caption of her Amended Complaint. (Docket no. 6 at 1.) To the extent that Plaintiff did intend to include Ingham County itself as a defendant in this matter, to state a claim against a county under § 1983, a plaintiff must allege that her injury was caused by an unconstitutional policy or custom of the municipality. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "[A] 'custom' is a legal institution that is permanent and established, but is not authorized by written law." *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993) (citing

*Monell*, 436 U.S. at 691). A § 1983 plaintiff may establish the existence of a custom by showing that policymaking officials knew about and acquiesced in the practice at issue. *Memphis, Tenn. Area Local. Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004). As noted, Plaintiff has not made any allegations against Ingham County whatsoever; thus, she has not alleged that her injury was caused by any policy or custom of the county or that any policymaking official in Ingham County knew about or acquiesced in any alleged unconstitutional practice. Therefore, Plaintiff has failed to state a claim against Ingham County.[10]

### 4. Plaintiff's Claims under the Equal Pay Act of 1963

In Plaintiff's Amended Complaint, she asserts that she was paid $16,000 less annually than her predecessor, a white male. (Docket no. 6 at 17.) Plaintiff argues that the discrepancy in pay was racially and sexually discriminatory. (*Id.*) In support of her argument, Plaintiff alleges that she and her predecessor performed the same job, with the same job requirements, which required equal skill, effort, and responsibility. (*Id.* at 10.) She further argues that she and her predecessor were rated and assessed using the same scales and that they had the same qualifications. (*Id.* at 10-11.)

To establish a prima facie case under the Equal Pay Act, a plaintiff must show that the defendant paid higher wages to employees of the opposite sex "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974). "Equal work 'does not require that the jobs be identical,' but only that there exist 'substantial equality of skill, effort, responsibility and working conditions.'" *Thomas v. Owen Electric Cooperative, Inc.*,

---

[10]Again, the Court's analysis would remain the same if Plaintiff had intended to include St. Clair County as a defendant instead of Ingham County.

121 Fed. App'x. 598, 603 (6th Cir. 2005) (citing *Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir. 1981)). "Skill includes consideration of factors as experience, training, education and ability[, but i]t must be measured in terms of the performance requirements of the job," not as compared between the two individuals. 29 C.F.R. § 1620.15(a). "Responsibility according to the federal regulations, is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation." *Thomas,* 121 Fed.Appx. at 604 (citing 29 C.F.R. § 1620.17(a)).

Accepting Plaintiff's well-plead allegations as true, which they must under Fed. R. Civ. P. 12(b)(6), Defendants initially asserted that Plaintiff's predecessor had been paid a higher salary because he held the position for 10 years and Plaintiff was inexperienced when she took the position.[11] Nevertheless, in Plaintiff's Response to Defendant's Motion, she indicates as follows:

> . . . It should also be noted that Plaintiff has recently received information that conflicts with the information Plaintiff formerly received in 2009 indicating that her predecessor was paid roughly $16,000 more annually than she was. The recent information alleges her predecessor was paid at roughly $93,000 annually as opposed to $109,000. However, both pieces of information came from unofficial sources, albiet sources Plaintiff would deem credible and reliable.

(Docket no. 13 at 23.) Thus, Defendants argue, Plaintiff "has conceded a necessary element of her prima facie case of wage discrimination." (Docket no. 16 at 5.)

The Court agrees with Defendants. As a central element of a case under the Equal Pay Act,

---

[11]Assuming, arguendo, that Plaintiff has established a prima facie case, Defendant must show that the difference in pay is justified under one of four enumerated defenses. *Corning Glass Works,* 417 U.S. 188, 196-97 (1974). One factor that the court may consider is whether the wage differential was based on education or experience rather than sex. *Balmer v. HCA, Inc.*, 423 F.3d 606, 612 (6th Cir. 2005).

Plaintiff must allege that there is a wage discrepancy. Plaintiff appears to be guessing that her predecessor was paid at a higher rate based on "unofficial sources" that "Plaintiff would deem credible and reliable." (Docket no. 13 at 23.) Moreover, Plaintiff admits that she has uncovered conflicting information from these same sources. (*Id.*) Therefore, Plaintiff's allegations are not "enough to raise a right to relief above the speculative level," and her claims under the Equal Pay Act should be dismissed.

### D. Conclusion

For the above-stated reasons, the Court recommends granting Defendants' Motions to Dismiss (docket nos. 5 and 11). Therefore, the Court recommends dismissing this case in its entirety.

### III. Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must

recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


Dated: May 6, 2013                                  s/ Mona K. Majzoub
                                                                  MONA K. MAJZOUB
                                                                  UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.


Dated: May 6, 2013                                  s/ Lisa C. Bartlett
                                                                  Case Manager