UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELRETA DODDS,

       Plaintiff,

                                    Case No. 12-14567
v.                                  Hon. Gerald E. Rosen
                                    Magistrate Judge Mona K. Majzoub

RICHARD DALE SNYDER, *et al.,*

       Defendants.
_____/

OPINION AND ORDER ADOPTING
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on         September 4, 2013        

PRESENT:  Honorable Gerald E. Rosen
                    Chief Judge, United States District Court

On May 6, 2013, Magistrate Judge Mona K. Majzoub issued a Report and

Recommendation ("R & R") recommending that the Court grant the motions to dismiss

filed by the Defendant government agencies and officials, and that Plaintiff Elreta Dodds'

*pro se* complaint be dismissed on grounds of Eleventh Amendment immunity and for

failure to state a claim. Plaintiff filed objections to the R & R on May 20, 2013, and

Defendants responded to these objections on June 3, 2013. Having reviewed the R & R,

Plaintiff's objections, Defendants' response, the parties' briefs on Defendants' underlying

motions, and the remainder of the materials in the record, the Court overrules Plaintiff's

objections and adopts the Magistrate Judge's R & R in its entirety.

2:12-cv-14567-GER-MKM   Doc # 20   Filed 09/04/13   Pg 2 of 10   Pg ID 341

As Defendants observe, a number of Plaintiff's objections amount to mere quarrels with or attempts to clarify statements in the R & R that have no bearing on the Magistrate Judge's recommended disposition of this case.  Specifically, out of Plaintiff's fourteen objections to the R & R, the first seven of these objections, even if accepted, would provide no basis for the Court to reject any of the Magistrate Judge's substantive rulings on the merits of Plaintiff's claims.  Moreover, in two additional objections, numbers 10 and 11, Plaintiff takes issue with the R & R's articulation of the governing law, but fails to suggest any reason for the Court to conclude that the Magistrate Judge either misstated or misapplied the pertinent legal standards.  Accordingly, the Court need not address these objections any further.

Two of Plaintiff's remaining objections, numbers 8 and 14, concern Plaintiff's allegation that as the director of the St. Clair County Department of Human Services, she was paid less than her white male predecessor in this position.  In particular, Plaintiff takes issue with the Magistrate Judge's determination that her claim under the federal Equal Pay Act, 29 U.S.C. § 206(d), is subject to dismissal because her allegations in support of this claim are insufficient to "raise a right to relief above the speculative level." (R & R at 16 (internal quotation marks omitted).)  In so ruling, the Magistrate Judge observed that while Plaintiff alleged in her amended complaint that she was paid $16,000 less annually than her white male predecessor, she later stated in her response to Defendants' motion to dismiss that she had come upon more "recent information" indicating that her predecessor had been paid roughly the same annual salary as she had

received.  (*Id.* at 15.)  In light of this discrepancy, the Magistrate Judge reasoned that

"Plaintiff appears to be guessing" as to the factual basis for her Equal Pay Act claim, and

found that such bare speculation could not support a properly pleaded claim.  (*Id.* at 16.)

Plaintiff's objection to this ruling does nothing to lessen her reliance on

speculation but, to the contrary, injects still more uncertainty into the factual basis for her

Equal Pay Act claim.  First, she states that **both** the (unnamed) source who initially

informed her of a pay disparity **and** the (also unnamed) source who advised her that there

was no such pay disparity were "credible and reliable," (Plaintiff's Objections at 22-23),

thus supporting the Magistrate Judge's conclusion that Plaintiff is merely "guessing" as to

the existence of a pay disparity.  Then, to further fuel the speculation and uncertainty

surrounding this issue, Plaintiff offers still a **third** version of the facts, stating that she was

recently shown a document revealing a somewhat smaller pay disparity of $4,165.50 due

to performance pay awarded to her predecessor beginning in September of 2005.  (*See id.*

at 24.)  Plainly, this latest information does not undermine the Magistrate Judge's

determination that Plaintiff's Equal Pay Act claim rests upon guesswork, but rather

confirms this finding.  In addition, to the extent that Plaintiff cites this possible pay

disparity as providing a basis for both an Equal Pay Act claim and a claim of race

discrimination under Michigan's Elliott-Larsen Civil Rights Act, Mich. Comp. Laws §

37.2101 *et seq.,* her reliance on speculation is equally fatal to both theories of recovery,

and the Magistrate Judge correctly observed elsewhere in the R & R that Plaintiff's

Elliott-Larsen claims against state agencies and state officials sued in their official

capacities are barred by Eleventh Amendment immunity, (*see* R & R at 11-12).

Plaintiff next objects to the Magistrate Judge's recommended disposition of a Fourteenth Amendment due process claim that is mentioned only as a "passing reference" in Plaintiff's amended complaint. (*See* R & R at 12 n.7.) In particular, Plaintiff takes issue with the Magistrate Judge's finding that she "was not deprived of a constitutionally protected liberty or property interest," where she was "not terminated from her employment" but instead was "reassigned to a different department and a different position" with no apparent loss of pay or benefits. (*Id.*) Plaintiff contends that this is an overly narrow view of her allegations of mistreatment in the workplace, and that she effectively suffered the requisite termination of her employment when she allegedly was "forced into retirement" by virtue of her reassignment into a "hostile, uncertain, and emotionally unsafe working environment" where she was "literally given nothing to do at work." (Plaintiff's Objections at 7.)

This theory of constructive discharge does not save Plaintiff's due process claim from the dismissal recommended by the Magistrate Judge. First, it is clear, as stated in the R & R, that Plaintiff's October 2009 reassignment to a different position with the same pay and benefits did not operate to deprive her of a constitutionally protected liberty or property interest, as necessary to establish a Fourteenth Amendment due process claim. *See Jackson v. City of Columbus,* 194 F.3d 737, 749 (6th Cir. 1999) (explaining that because the plaintiff in that case "was neither terminated nor lost any pay or benefits, we find that he was not deprived of a constitutionally protected property interest"). In

addition, the allegations of Plaintiff's complaint are manifestly insufficient to establish that she was constructively discharged when she took early retirement in November of 2010. The Sixth Circuit has explained that "[a] constructive discharge exists if working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Yates v. Avco Corp.,* 819 F.2d 630, 636-37 (6th Cir. 1987) (internal quotation marks and citations omitted). Surely, Plaintiff here could not have faced any such intolerable working conditions, where she remained on the job for over a year between the complained-of job reassignment and her election to take an early retirement. Moreover, the bulk of her complaints as to her job reassignment concern the setting (a cubicle rather than a "corner office overlooking a marina"), the loss of a job title, less desirable job duties, and a demotion in "status," (Amended Complaint at ¶ 4), but the Sixth Circuit has held that such dissatisfaction with job assignments and working conditions is insufficient as a matter of law to establish a constructive discharge. *See Smith v. Henderson,* 376 F.3d 529, 534 (6th Cir. 2004).

Yet, even if Plaintiff's allegations, accepted as true, could meet the demanding standards for demonstrating a constructive discharge, her Fourteenth Amendment due process claim would be subject to dismissal on two other grounds. First, she has not alleged that she was denied sufficient process for challenging her October 2009 reassignment. *See Jackson,* 194 F.3d at 749 (observing that once a plaintiff has established a deprivation of a constitutionally protected liberty or property interest, she must then show that she was denied the process that was due for this deprivation).

Although Plaintiff complains that the notice of her reassignment warned that she would

be terminated if she did not accept this reassignment, she has not alleged that she lacked

any recourse for challenging this action, whether before or after the fact.[1]  Next, and as

pointed out in the R & R, (*see* R & R at 10-11, 12 n.7), Plaintiff's Fourteenth Amendment

due process claim under 42 U.S.C. § 1983 is barred by Eleventh Amendment immunity to

the extent that she seeks to pursue such a claim against state agencies or state officials

sued in their official capacities, and Plaintiff has sued only a single Defendant official,

Susan King, in her individual capacity.[2]

Next, Plaintiff objects to the Magistrate Judge's determination that her request for

injunctive relief is moot.  In particular, even assuming that at least some of Plaintiff's

official-capacity claims might withstand an immunity-based challenge to the extent that

Plaintiff seeks injunctive rather than monetary relief, the R & R concludes that the

injunctive relief actually sought by Plaintiff — *i.e.,* a permanent injunction against any

further discrimination or retaliation — is moot in light of Plaintiff's November 2010

retirement.  (*See* R & R at 12.)  Plaintiff objects that this overlooks the fact that she

"receives a pension and pension benefits from the state of Michigan," giving rise to the

possibility that Defendants might be "in a position to retaliate against the Plaintiff by way

---

[1]To the contrary, the notice of reassignment given to Plaintiff references various civil service rules and regulations, and these regulations presumably include mechanisms for challenging employment actions.

[2]As discussed below, the Magistrate Judge has recommended that the claims against Defendant King in her individual capacity be dismissed for failure to state a claim, and the Court concurs in this recommendation.

of her pension." (Plaintiff's Objections at 16.) Yet, as Defendants point out in response,

Plaintiff has failed to allege that "Defendants are currently discriminating against her or

that Defendants have any involvement with her pension." (Defendants' 6/3/2013

Response at 7.) It follows that Plaintiff's request for injunctive relief rests purely upon

impermissible speculation rather than allegations that give rise to a plausible right of

recovery.

Finally, Plaintiff challenges the Magistrate Judge's finding that the allegations of

her complaint fail to suggest a basis for charging Defendant Susan King, the director of

human resources for the Michigan Department of Human Services, with liability in her

individual capacity under any of the theories of recovery advanced by Plaintiff in this

suit. As noted in the R & R, Defendant King is referenced only one time in Plaintiff's

amended complaint, as the individual who issued the October 5, 2009 notification to

Plaintiff that she was being reassigned to a new position and that she would be terminated

if she refused this reassignment. The Magistrate Judge observed that as a supervisory

official with no direct involvement in managing Plaintiff's day-to-day activities,

Defendant King could be held liable under § 1983 only if Plaintiff alleges and shows that

Ms. King "personally engaged in or otherwise 'authorized, approved, or knowingly

acquiesced in the unconstitutional conduct," (R & R at 13 (quoting *Shehee v. Luttrell,* 199

F.3d 295, 300 (6th Cir. 1999))), and the Magistrate Judge found that Plaintiff's single

reference to Ms. King does not meet this standard.

In taking issue with this conclusion, Plaintiff argues primarily that the notification

7

of reassignment itself, as issued by Defendant King, suffices to give rise to one or more of the theories of liability asserted in her complaint.  Specifically, Plaintiff construes this notification as "t[aking] away any and all recourse the Plaintiff had to fight the reassignment, thus denying the Plaintiff her Fourteenth Amendment due process rights." (Plaintiff's Objections at 18.)  Yet, as observed earlier, this notification does no such thing, but merely advises Plaintiff that she must accept reassignment or face termination. Regardless of which of these options she chose, nothing in the notification foreclosed Plaintiff from pursuing any challenges or remedies provided to state employees under Michigan's civil service rules and regulations, and it simply is not plausible to construe the notification as overriding any and all such available remedies.[3]  Next, to the extent that Plaintiff suggests that Defendant King would invariably be involved in any violation of her statutory or constitutional rights because "[a]ll investigations, discipline, reprimands, disciplinary conferences, dismissals, and the like came through her office," (*id.*), this respondeat superior or "right to control" theory of liability is unavailable under § 1983.  *Shehee,* 199 F.3d at 300.[4]

---

[3]Moreover, the Court observed earlier that Plaintiff's reassignment to a different position with no loss of pay or benefits did not deprive her of a protected liberty or property interest that could support a Fourteenth Amendment due process claim.  Thus, even assuming that Defendant King participated in this reassignment by issuing the notification, there was no resulting due process violation for which she could be held liable.

[4]To the extent that Plaintiff suggests in her objections that she is seeking to pursue a First Amendment claim of retaliation, she has forfeited this issue by failing to present it to the Magistrate Judge, and by instead raising it for the first time in her objections to this Court.  *See Murr v. United States,* 200 F.3d 895, 902 n.1 (6th Cir. 2000).  In any event, Plaintiff identifies her protected conduct as "fighting [her] reassignment," (Plaintiff's Objections at 20), and it is

For these reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiff's May 20, 2013

objections to the Magistrate Judge's May 6, 2013 Report and Recommendation (docket

#17) are OVERRULED.  IT IS FURTHER ORDERED that the Magistrate Judge's R &

R is ADOPTED as the ruling of this Court.  Finally, IT IS FURTHER ORDERED, for the

---

well established that an employee does not speak on a matter of public concern, as necessary to
demonstrate protected First Amendment activity, by communicating with her superiors regarding
her own job responsibilities and personal workplace grievances. *See Nair v. Oakland County
Community Mental Health Authority,* 443 F.3d 469, 478-79 (6th Cir. 2006); *Harrison v. Oakland
County,* 612 F. Supp.2d 848, 868 (E.D. Mich. 2009).

reasons set forth in the Magistrate Judge's R & R as supplemented by the above rulings,

that Defendants' November 8, 2012 and December 5, 2012 motions to dismiss (docket #s

5 and 11) are GRANTED.

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  September 4, 2013

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 4, 2013, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135